UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                             Criminal No. 15-cr-170-JD
                                                        Opinion No. 2020 DNH 093

Jaclyn Hilow

O R D E R

Jaclyn Hilow, proceeding pro se, moved for compassionate release from FCI Danbury under 18 U.S.C. § 3582(c) because of the risk presented by the COVID-19 pandemic in combination with her health issues. After counsel was appointed, counsel filed a supplemental motion. The government objects.

Standard of Review

The Director of the Bureau of Prisons ("BOP") may bring a motion on behalf of a defendant to reduce the term of the defendant's imprisonment. § 3582(c)(1)(A). If the Director does not file such a motion on behalf of a defendant, the defendant may file a motion on his or her own behalf in certain circumstances. The defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or, thirty days must have passed since the warden at the defendant's facility received the defendant's request without a response. Id.

When a defendant has satisfied the administrative exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "extraordinary and compelling reasons warrant such a reduction" and "after considering the factors provided in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). The court also considers whether the requested "reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). The applicable policy statement provides guidance on when extraordinary and compelling circumstances may be found. U.S.S.G. 1B1.13.

## Background

Hilow pleaded guilty on June 30, 2016, to a charge of conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846 and § 841. She was sentenced to ten years of imprisonment, the mandatory minimum sentence, to be followed by five years of supervised release.[1] She has now served sixty-two months of her 120-month sentence, and her release date is September 16, 2022.

---

[1] The advisory guideline range for Hilow's sentence was 135 to 168 months. The government assented to Hilow's motion for a downward variance to the statutory minimum sentence. The court granted that motion.

2

During her incarceration, Hilow has participated in extensive treatment programs to address her substance abuse and mental health issues. She has also participated in and completed educational and training programs. On October 31, 2017, she was awarded "FSL Community Member of the Month" that recognized her "For Striving to Practice and Model Community Values, Skills, Conscientiousness and Kindness." She has been discipline free during her prison term, and the government agrees that she has done very well.

Hilow has asthma, high blood pressure, migraines, high cholesterol, and acid reflux disease. She is also prediabetic and borderline obese. She has an Albuterol inhaler to be used as needed for asthma, and she takes medication for high blood pressure. She uses ibuprophen and Excedrin as needed for migraines and takes Zantac for acid reflux. The government had Hilow's medical records reviewed by Dr. Gavin Muir for purposes of her motion for compassionate release. Dr. Muir found that Hilow's asthma is in the mild persistent category but did not address Hilow's other health issues. In addition to her physical health issues, Hilow has been diagnosed with bipolar disorder, anxiety, depression, and post traumatic stress disorder.

Currently, Hilow is incarcerated at FCI Danbury. It is undisputed that FCI Danbury has had and continues to have a

significant number of confirmed COVID-19 cases among inmates and staff.  See www.bop.gov/cornoavirus, last visited on May 29, 2020; Martinez-Brooks v. Easter, 2020 WL 2405350, at *27 (D. Conn. May 12, 2020).  On April 3, 2020, Attorney General William Barr issued a memorandum for the Director of the Bureau of Prisons with the subject:  "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic."  Doc. 80-1.  In that memorandum, Attorney General Barr acknowledged a significant number of COVID-19 cases at FCI Danbury, found that an emergency existed, and directed the Bureau of Prisons ("BOP") to maximize transfers from FCI Danbury to home confinement.  Id. at *2.

In her motion, Hilow describes her living conditions as an open dormitory that looks like a warehouse with standard office cubicles set up inside of it.  Hilow lives in one of the cubicles with three other women.  The cubicles do not have doors, and the walls are less than five feet five inches high.  Hilow states that because of the living conditions there is no way to practice social distancing, as is recommended to avoid COVID-19 infection.

Hilow applied to the warden at FCI Danbury, Warden D. Easter, on April 14, 2020, for a reduction in her sentence because of her health concerns related to COVID-19.  Her request was denied on April 24, 2020.  She filed an appeal of that

4

decision on April 29, 2020, but did not receive a response. On April 17, 2020, the BOP considered Hilow for home confinement but declined to make that change.

On April 27, 2020, inmates at FCI Danbury filed a petition for a writ of habeas corpus as a putative class action under 28 U.S.C. § 2241, seeking relief related to the risks presented by COVID-19 in that facility. Martinez-Brooks v. Easter, 2020 WL 2405350, at *1-*2 (D. Conn. May 12, 2020). In that case, the court noted in its order issued in conjunction with a temporary restraining order, that there are significant numbers of positive COVID-19 cases in the facility and that the facility has experienced difficulty in coping with the spread of the disease. Id. at *4-*9. The court found that despite the authority granted to the BOP to place inmates on home confinement and the direction in Attorney General Barr's memorandum to do so, "the implementation of this directive at FCI Danbury has been slow and inflexible." Id. at 22. Further, the court found, "by failing to make meaningful use of her home confinement authority, the Warden has failed to implement what appears to be the sole measure capable of adequately protecting vulnerable inmates—a measure the Attorney General directed the BOP to implement 'immediately' and with 'dispatch'." Id. at *23. The court denied the warden's motion to dismiss the suit and granted, in part, the inmates' motion for a temporary

5

restraining order to "accelerat[e] the process for evaluating inmates for home confinement and compassionate release, and focus[] that process on achieving a 'reasonable' balance between the risks to inmate safety and the risks to public safety." Id. at *32.

United States Probation Officer Scott Davidson reviewed Hilow's request for compassionate release and filed an initial report. He found that Hilow's request is based on her assertion that her medical conditions put her at risk of complications if she were to contract COVID-19. He stated that he is not qualified to make clinical assessments of her medical conditions. Officer Davidson also reported that with respect to recidivism and danger to the community, Hilow's score under Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), an assessment system for BOP inmates, is minimal.

The court held a telephone conference on May 28, 2020, with Assistant United States Attorney Jennifer Davis; counsel for Hilow, Jeffrey Levin; and Probation Officer Scott Davidson. Hilow's father, Richard Nigro, also was present during the conference. Levin advocated on Hilow's behalf for compassionate release, noting her good behavior, treatment, and training during her imprisonment, and explaining the impact of her medical conditions in relation to the COVID-19 risk. In response, Davis acknowledged Hilow's accomplishments during her

imprisonment, recognized that Hilow's sentence was severe although statutorily mandated, stated that she was not a danger to the public, and stated that her release plan was appropriate. Davis continued to oppose compassionate release on the ground that Hilow did not meet the statutory requirement of an extraordinary and compelling reason to support release.

At the court's request, Officer Davidson filed a supplemental report. He stated that he had spoken with Hilow's parents-in-law, Donna and Mark Hilow, about Jaclyn Hilow's proposed plan to live with them if she were released from prison. The Hilows confirmed the plan and their ability and willingness to have Jaclyn live with them. They also told Officer Davidson that Jaclyn could self-quarantine at their home for fourteen days and that they were able to provide the separation, equipment, and cleaning to facilitate that process. Based on his investigation, Officer Davidson found that Jaclyn Hilow's proposed release plan, including quarantine, was appropriate for supervision.

## Discussion

Certain matters are not disputed in this case. The COVID-19 pandemic has caused a health emergency across the country, including in prisons, and inmates at FCI Danbury, including Hilow, are at risk of contracting that illness. The government

does not dispute that Hilow has exhausted her administrative remedies as a prerequisite to seeking compassionate release under § 3582(c).  The government acknowledges that Hilow satisfies the applicable sentencing factors under 18 U.S.C. § 3553(a).  Therefore, the disputed issue is whether Hilow demonstrates an extraordinary and compelling reason to reduce her sentence under § 3582(c).  Hilow contends that she does, and the government contends that she does not.

A.   Extraordinary and Compelling Reason

"A generalized risk of infection with COVID-19, by itself, is not enough to show extraordinary and compelling reasons for a reduction in sentence." United States v. Bischoff, --- F. Supp. ---, 2020 WL 2561423, at *2 (D.N.H. May 19, 2020); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); United States v. Wheeler, 2020 WL 2801289, at *3 (D.D.C. May 29, 2020); United States v. Svirskiy, 2020 WL 2798099, at *1 (D. Mass. May 29, 2020); United States v. Edington, 2020 WL 2744140, at *3 (D. Colo. May 27, 2020).  A combination of health factors that put the inmate at higher risk if infected with COVID-19 along with a documented risk of infection in the facility where the inmate is incarcerated, however, can meet the § 3582(c) standard.  See, e.g., United States v. Oliver, 2020 WL 2768852, at *6 (E.D. Mich. May 28, 2020); United States v. Jackson, 2020 WL 2735724,

at *3 (W.D. Va. May 26, 2020); Bischoff, 2020 WL 2561423, at *2; United States v. Ramirez, 2020 WL 2404858, at *9 (D. Mass. May 12, 2020). An inmate seeking relief under § 3582(c) bears the burden of showing that she meets the statutory requirements. United States v. Mayfield, 2020 WL 2744607, at *1 (D.N.J. May 27, 2020); United States v. Britton, 2020 WL 2404969, at *1 (D.N.H. May 12, 2020).

Application Note 1 to U.S.S.G. § 1B1.13 provides guidance as to when an extraordinary and compelling reason to reduce a defendant's sentence may exist. "[A] serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," constitutes an extraordinary and compelling reason. Id.

Hilow has a variety of chronic medical conditions, including asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity. Dr. Muir only addressed Hilow's asthma, which he categorized as mild. Hilow contends that when her medical conditions are considered together and in combination with her high risk of contracting COVID-19 at FCI Danbury, she has shown an extraordinary and compelling reason to reduce her sentence under § 3582(c). To that point, Application Note 1 provides that sentence reduction is appropriate if there

9

is an extraordinary and compelling reason other than or in combination with listed factors.[2]  U.S.S.G. § 1B1.13, Application Note 1(D).  The collective risks associated with several non-serious medical conditions, when considered together and in combination with the risks posed by COVID-19 in the defendant's facility, can provide an extraordinary and compelling reason to reduce the defendant's sentence under § 3582(c).  United States v. Harrell, 2020 WL 2768883, at *3 (E.D. Mich. May 28, 2020) (finding an extraordinary and compelling reason even though defendant's medical conditions were not severe because "his conditions still exacerbate each other, placing him in a much more vulnerable position than a healthy person if he were to get COVID-19"); see also United States v. Torres, --- F. Supp. ---, 2020 WL 2815003, at *9-*11 (S.D.N.Y. June 1, 2020) (finding an extraordinary and compelling reason based on defendant brothers' rehabilitation while in prison, public service, and the risk of infection with COVID 19).

Hilow has several medical conditions that raise concerns in conjunction with COVID-19.  As is noted above, even controlled hypertension in conjunction with COVID-19 is a health risk.  Id.

---

[2] Although Application Note 1(D) is addressed to the Director of the BOP, the amendment of § 3582(c) under the First Step Act extends that provision to courts considering motions under § 3582(c).  United States v. Chester, --- F. Supp. 3d ---, 2020 WL 2771077, at *4 (W.D.N.Y. May 29, 2020).

Respiratory conditions, including asthma, put people at higher risk of complications and morbidity from COVID-19.  See, e.g., United States v. Gileno, --- F. Supp. 3d ---, 2020 WL 1916773, at *5 (D. Conn. Apr. 20, 2020).  High cholesterol is also a risk factor.  See, e.g., United States v. Staltare, 2020 WL 2766124, at *1 (S.D.N.Y. May 28, 2020).  In addition, diabetes and obesity cause vulnerability to complications from COVID-19.  Harrell, 2020 WL 2768883, at *3; United States v. Gibson, 2020 WL 2749759, at * 3 (S.D. Tex. May 27, 2020).

In conjunction with her various medical conditions, Hilow has shown that her ability to protect herself from infection with COVID-19 at FCI Danbury is compromised.  FCI Danbury is experiencing active cases of COVID-19.  Two months ago, Attorney General Barr recognized an emergency situation at FCI Danbury because of COVID-19 and directed the warden to use home confinement as a means to reduce the prison population and reduce the risk.  The court in Martinez-Brooks found on May 12, 2020, that the conditions at FCI Danbury with respect to COVID-19 remained dangerous and that the warden's implementation of Attorney General Barr's directive had been "slow and inflexible."  2020 WL 2405350, at *22.

Hilow is tightly housed with other inmates, without any means to protect herself from contracting COVID-19 from other inmates.  Hilow has provided anecdotal evidence to her counsel

11

that inmates with symptoms suggesting COVID-19 have been returned to her area in the facility.  The risk of contagion at FCI Danbury is well documented and is also confirmed by Hilow's observations.

Hilow has demonstrated an extraordinary and compelling reason to reduce her sentence.

B. <u>Sentencing Factors</u>

In addition to an extraordinary and compelling reason to reduce her sentence, a defendant must show that the sentencing factors under § 3553 support her motion to the extent the factors are applicable.  § 3582(c)(1)(A).  Hilow addresses the § 3553 factors pertaining to the nature and circumstances of her offense, her own history and characteristics, and the need for the sentence.  § 3553(a)(1) & (2).

As is described above in the background section, Hilow has demonstrated exemplary behavior while in prison.  She has taken and successfully completed substance abuse programs.  She has also taken and successfully completed training as a teacher's aide and housekeeper.  She has taken the following classes and courses:  "Small Business I ACE Class," "V-Day Monologues Class and Performance," "Mid-Summer's Night Dream ACE Class," and "Yale Divinity School, Inside/Out Prison Exchange Course: Pastoral Wisdom in Faction, Memoir and Drama."  Doc. 78, at *13.

Hilow was charged with conspiracy to distribute heroin. Her criminal history does not include violent crimes. Her sentence of 120 months was the statutory minimum for her crime. As the government acknowledges, the sentence was severe, although below the recommended guideline range.

Hilow has not been disciplined while in prison. The government represents that she is not a danger to the public and that her risk of recidivism is minimal. The government does not dispute that Hilow's request for a reduced sentence meets the requirements of the § 3553 factors.

C.  Result

Taking into consideration Hilow's combination of health conditions that cause an increased risk to her if she contracts COVID-19, along with the significant risk of contracting COVID-19 at FCI Danbury, Hilow has shown an extraordinary and compelling reason to reduce her sentence. In addition, her behavior and conduct while in prison strongly support her request. Therefore, Hilow has demonstrated sufficient grounds to grant her request for a reduction of her sentence under § 3582(c)(1).

## Conclusion

For the foregoing reasons, the defendant's motions for compassionate release (documents nos. 75 and 76) are granted as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on special supervised release for six months during which time she is to remain on home confinement.

3) Following the term of special supervised release, the defendant will be placed on supervised release for a term of five years.

4) During these terms of special supervised release and supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

5) The BOP shall release the defendant immediately following processing, subject to the provisions of paragraph 6.

6) The court recommends that the BOP screen the defendant for COVID-19 within twelve hours prior to her release, and if she is displaying symptoms consistent with COVID-19, test the defendant and share the results with the United States Probation Office in the District of New Hampshire. In the event of a

positive test, the defendant will remain in the custody of the BOP for the appropriate period of quarantine.

    7) The court will issue an amended criminal judgment.

SO ORDERED.

                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

June 2, 2020

cc:  Counsel of Record
     U.S. Probation
     U.S. Marshal

## APPENDIX A

SUPERVISION CONDITIONS:

While under supervision, defendant must comply with the standard conditions that have been adopted by this Court, and the following mandatory conditions:

> Defendant must not commit another federal, state, or local crime.
>
> Defendant must not unlawfully possess a controlled substance.
>
> The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 72 drug tests per year.
>
> Defendant must cooperate in the collection of DNA as directed by the probation officer.

In addition, defendant must comply with the following special conditions:

1. Defendant must self-quarantine in an approved residence during the first 14 days of her supervised release.

2. Defendant is restricted to her residence at all times, except for employment; education; religious services; medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the officer for a term of six (6) months. During that time, defendant will be monitored using the location monitoring technology at the direction of the probation officer. Defendant must follow the rules and regulations of the location monitoring program.

3. As directed by the probation officer, the defendant shall participate in a program approved by the United States Probation Office for treatment of narcotic addiction or drug or alcohol dependency which will include testing for the detection of substance use or abuse. The defendant shall also abstain from the use of alcoholic beverages and/or all other intoxicants during and after the course of treatment. The defendant shall pay for the cost of treatment to the extent she is able as determined by the probation officer.

4. The defendant shall participate in a program of mental health treatment as directed by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall pay for the cost of treatment to the extent she is able as determined by the probation officer.

2

5. The defendant shall submit her person, residence, office, or vehicle to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion that contraband or evidence of a violation of a condition of release may exist; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.